IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Warren Richards, <br><br> Plaintiff, <br><br> v. <br><br> Fashion Nova, LLC <br><br> Defendant. | Case No. 1:25-cv-01145-TWP-MKK |

**Brief In Support of Fashion Nova, LLC's Motion to Dismiss Plaintiff's Complaint
Under Fed. R. Civ. P. 12(b)(6)**

When Congress created a private right of action under the Telephone Consumer Protection Act (TCPA) to sue for unwanted "telephone calls," did it also intend those words to mean a "text message"? The answer to this question determines whether Plaintiff has a private right of action to sue for alleged violations of the TCPA from his alleged receipt of text messages from Fashion Nova. As Fashion Nova will show, the answer to this dispositive question of law is *no* — Congress did not intend to create a private right of action covering technology that did not exist when it passed the TCPA.

When Congress passed the TCPA in 1991, the enabling statute in 47 U.S.C. § 227(c)(1) directed the Federal Communications Commission to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights." *Id.* Congress also created a private right of action covering any person "who has received more than one *telephone call* within any 12-month period" in violation of the

1

rules promulgated by the FCC under Section 227(c). 47 U.S.C. § 227(c)(5) (emphasis added).

Invoking this private right of action for unwanted telephone calls, Plaintiff now sues Fashion Nova because it sent him text messages allegedly in violation of the TCPA. Yet the plain language of the private right of action in Section 227(c)(5) is limited to persons who have received *telephone calls*, not text messages. Plaintiff's single count for an alleged violation of the TCPA fails as a matter of law since he has not alleged receiving any telephone calls from Fashion Nova within the meaning of the plain language of Section 227(c). Accordingly, the Court should dismiss Plaintiff's complaint.

## I.  SUMMARY OF COMPLAINT

Plaintiff alleges that in May and June of 2025 Fashion Nova sent text messages to Plaintiff's (765) 748-XXXX cellular telephone number. Compl., ¶¶ 8, 16. Plaintiff alleges he obtained the phone number sometime in 2025 and he registered it on the National Do Not Call Registry ("DNC") on March 25, 2025. *Id.*, ¶¶ 8, 15. According to his complaint, "[t]he purpose of the subject text messages was to advertise and market Defendant's products or services," and the messages "were intended for someone other than, and unknown to Plaintiff." *Id.*, ¶¶ 19–20.

Plaintiff next alleges that text messages he received from Fashion Nova violated 47 C.F.R. § 64.1200(c), which prohibits sending a "telephone solicitation" to a "residential telephone subscriber who has registered his telephone number" on the

DNC. Compl., ¶ 56. Based on this alleged violation of Section 64.1200(c), Plaintiff brings one count for violation of the TCPA under 47 U.S.C. § 227(c)(5). *Id.*, ¶¶ 53–61. He also seeks to certify a putative class which he defines as:

> All persons throughout the United States (1) who did not provide their telephone number to Fashion Nova, LLC, (2) to whom Fashion Nova, LLC delivered, or caused to be delivered, more than one voice message or text message within a 12-month period, promotion Fashion Nova, LLC goods or services, (3) where the person's residential or cellular telephone number had been registered with the National Do Not Call registry for at least thirty days before Fashion Nova, LLC delivered, or caused to be delivered, at least two of the voice messages or text messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

*Id.*, ¶ 25.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements …. [O]nly a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Id.* at 678–79.

3

### III.   DISCUSSION

#### A.   Congress Passed the TCPA in 1991 to Regulate Certain Telephone Calls

Passed in 1991, the TCPA "bans certain invasive telemarketing practices and directs the Federal Communications Commission to prescribe implementing regulations." *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 370 (2012).

The Supreme Court recently observed that just one slice of the TCPA's provisions "has spawned significant TCPA litigation" over "unwanted faxes." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 149 (2025). A combination of four factors incentivizes so much litigation: (1) the "private right of action," (2) the "statutory minimum damages for each violation," (3) the "number of violations that a business can quickly rack up," and (4) the "class action device." *Id.*

The same can be said of the TCPA's often litigated prohibitions on telephone calls made with certain types of technology under 47 U.S.C. § 227(b), and telephone calls to certain types of numbers under Section 227(c), namely numbers registered on the National "Do Not Call" Registry (the "DNC").

47 U.S.C. § 227(b) prohibits, with some exceptions, making calls "using any automatic telephone dialing system or artificial or prerecorded voice" to enumerated types of telephone lines, including cellular telephones. 47 U.S.C. § 227(b)(1)(A). Under 47 U.S.C. § 227(b)(2), Congress directed the FCC to "prescribe regulations to implement the requirements of" of Section 227(b). The FCC promulgates its regulations in 47 C.F.R.

§ 64.1200(a) and (b). 47 U.S.C. § 227(b)(3) authorizes a private right of action by any person for "an action based on a violation of [Section 227(b)] or the regulations prescribed [by the FCC] under [Section 227(b).]"

Under 47 U.S.C. § 227(c)(2), Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Under its rulemaking authority in Section 227(c)(2), the FCC promulgated regulations which prohibit, with some exceptions, making "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). 47 U.S.C. § 227(c)(5) permits a private right of action by any "person who has received more than one telephone call within any 12-month period by … the same entity in violation of the regulations prescribed under this subsection."

### B. The Plain Language of 47 U.S.C. § 227(c)(5) Authorizes Suit for "Telephone Calls" that Violate the TCPA, Not "Text Messages"

As the Supreme Court recently explained, "In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's

5

interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, *supra*, 606 U.S. at 155.

"As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851–52 (7th Cir. 2020). "In ascertaining a statute's plan meaning, we must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id*. (cleaned up). Words in a statute "will be interpreted as taking their ordinary, contemporary, common meaning." *Id*. (citation omitted). Courts determine the "ordinary, contemporary, common meaning of [words in a statute] by looking at what they meant when the statute was enacted, often by referencing contemporary dictionaries." *Id*. "If the statutory language's plain meaning is unambiguous, our inquiry ends there." *Id*.

Congress passed the TCPA in 1991 when cell phones were the size of bricks and text messages had not been invented. "The first text message was transmitted Dec. 3, 1992. Engineer Neil Papworth typed 'merry Christmas' on a computer and sent the first SMS message to the cellphone of Vodafone director Richard Jarvis."[1] Since words in a statute are interpreted "by looking at what they meant when the statute was enacted," it is impossible for Congress could have meant that a "telephone call" was a "text

---

[1] See The First Text Messages Celebrates 25 Years, available at https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years [https://perma.cc/K6R4-RH3E].

6

message." The technology did not exist when Congress passed the TCPA. "Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, ___ F. Supp. 3d ___ , No, 1:24-CV-01074, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025).

Fast forward to present day when telephone calls and text messages are ubiquitous communications technology. In common parlance, the words "telephone call" means something different than "text message." *Jones*, 2025 WL 2042764, at * 4. Would anyone understand the statement that "Sally sent me a text message inviting me over" to mean "Sally sent me a telephone call inviting me over"? The answer is no. As observed in *Jones*, the words "text message" are completely absent from Section 225(c)(5): "[n]owhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Id*. at *5. **The inverse is also true**: the TCPA, as amended in 2019, has a definition of "text message" which expressly *excludes* "telephone calls." 47 U.S.C. § 227(e)(8)(C).

In 2019, Congress passed the TRACED Act which amended the TCPA to include certain provisions about caller identification and reporting requirements for TCPA violations.[2] Passed well-after the advent of text messages, TRACED created rules centered on caller identification and information-reporting which selectively apply to

---

[2]   The Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, PL 116-105, Dec. 30, 2019, 133 Stat 3274.

"calls" and "text messages." 47 U.S.C. § 227(e), (h) & (i).

In Section 227(e), Congress defined "text message" to mean "a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service code," but expressly excluding "a real-time, two-way voice … communication." 47 U.S.C. § 227(e)(8)(C). What type of technology fits the description of a real-time, two-way voice communication? A telephone call. By defining the words "text message" to expressly *exclude* "telephone calls," Congress recognized these terms have different meanings and they describe distinct telecommunications technology.

In TRACED, Congress also created selective reporting and information-sharing requirements for "calls" and "text messages" sent in violation of the TCPA's various subsections. 47 U.S.C. § 227(h) & (i).[3] Nowhere in Section 227(h) or (i) did Congress seek information about "text messages" sent under Section 227(c). Instead, Congress created information-sharing protocols for information relating to "a call or text message" sent in violation of Section 227(b) and (e). Noticeably absent from these requirements is information relating to a "text message" sent in supposed violation of Section 227(c) as suggested by Plaintiff's pleading. Instead, when it came to Section 227(c), Congress was

---

[3] Section 227(h) and (i) both incorporate the definition of "text message" under Section 227(e).

8

solely interested in receiving information about "a call" made in violation of Section 227(c). 47 U.S.C. § 227(h)(A)(i). These amendments show Congress understood and meant — even when amending the TCPA nearly three decades after its first enactment in 1991 before the invention of "text messages" — that Section 227(c) is limited only to "telephone calls." Although Plaintiff tries to rewrite the TCPA by alleging a legal conclusion in his complaint, telephone calls in Section 227(c) does not mean text messages.

The plain meaning of "telephone call" in 47 U.S.C. § 227(c)(5) is unambiguous, so the Court's inquiry should end with the plain language of the statute. Because "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages," Plaintiff's single count for violation of the TCPA, based on allegedly receiving text messages from Fashion Nova, fails as a matter of law. *Jones*, 2025 WL 2042764, at *4.

C. **The FCC's Declaratory Rulings Do Not Support Interpreting the Words "Telephone Call" in 47 U.S.C. § 227(c)(5) to Mean a "Text Message"**

It is the role of courts "to independently interpret [statutes] and effectuate the will of Congress subject to constitutional limits." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 371 (2024). In doing so, courts may "seek aid from the interpretations of those responsible for implementing particular statutes." *Id*. An interpretive ruling "cannot bind a court" but may be "informative to the extent it rests on factual premises within the agency's expertise." *Id*. at 402. While an agency's interpretation may have the "power to persuade," it lacks the "power to control." *Id*. "Congress expects courts to do

9

their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch." *Id*.

The FCC's prior declaratory rulings do not support an interpretation of the words "telephone call" in 47 U.S.C. § 227(c)(5) to mean a text message. To start, the FCC has never expressly interpreted or addressed the meaning of the words "telephone call" as used in 47 U.S.C. § 227(c). The FCC has, when interpreting other subsections of the TCPA, stated a "call" may include "text message":

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number …. This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14115 at ¶ 165 (2003) ("2003 Order").

This pronouncement concerned only calls made with an automatic telephone dialing system, or an artificial or pre-recorded voice — a practice prohibited by Section 227(b), not by Section 227(c). *Id*. As much as the FCC mentioned or invoked the TCPA's statutory provisions in Paragraph 165 of the 2003 Order, it solely referenced Section 227(b), and made no reference there to Section 227(c). *Id*., nn. 603, 605 & 607; see *Jones*, 2025 WL 2042764, at *4 ("[o]n its face … the 2003 Order explicitly references only Section 227(b).") It follows that the FCC's pronouncement flowed from its rulemaking authority delegated by Congress under 47 U.S.C. § 227(b), *not* Section 227(c).

10

There is apparent logic to the FCC's differing views on the scope of Section 227(b) as distinct from 227(c). According to the FCC, "automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls." *Id.*, ¶ 165, n. 607 (citing 47 U.S.C. § 227(b)). The FCC's pronouncements in the 2003 Order therefore do not apply here because they solely and exclusively concern a distinct subsection of the TCPA.

Similarly, 47 C.F.R. § 64.1200(e) states that the rules promulgated by the FCC under its rulemaking authority under 47 U.S.C. § 227(c) are "applicable to any person or entity making … telemarketing calls or text messages to wireless telephone numbers to the extent described in the [2003 Order]." Because the 2003 Order does not address the applicability of Section 227(c) to text messages, however, it has no bearing on whether the plain language of Section 227(c)(5) also applies to text messages.

Moreover, had the FCC actually intended this language to express its interpretation that the words "telephone call" as used in Section 227(c)(5) also mean the words "text message," it would not likely have chosen this oblique and confusing way of saying so. This is particularly true when the FCC knows how to express its interpretations directly and clearly when it wants to. *See, e.g.*, 47 C.F.R. § 64.1200(a)(9) ("As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call.") Even if this were what the FCC had somehow intended to say under Section 64.1200(e), its interpretation would be of minimal

11

persuasive value, if any, since the TCPA's plain statutory language in Section 227(c)(5) applies to telephone calls, not to text messages. *Jones*, 2025 WL 2042764, at *5 (the 2003 Order lacks persuasive value and does not override the plain language analysis because "the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).")

Ultimately, this Court's role when interpreting the meaning of "telephone call" under 47 U.S.C. § 227(c)(5) is to reach the "best" reading of the statute which is "the reading the court would have reached if no agency were involved." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024). This is because "[i]n the business of statutory interpretation, if it is not the best, it is not permissible." *Id*. at 400. The best interpretation of the term "telephone call" here is the one that is faithful to the statutory text of the TCPA. *Jones*, 2025 WL 2042764, at *5 ("The 'ordinary' principle of statutory interpretation — to start with the text of the statute to ascertain its plain meaning — provides the answer.")

At bottom, reading the words "text message" into "telephone call" contrary to the plain language of 47 U.S.C. § 227(c) is not a statutory interpretation of the TCPA's plain language. Instead, it requires a rewriting of the statute to interpose new and additional words that do not appear there. *Jones*, 2025 WL 2042764, at *5. ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in

12

American life in 2025. The Court confines itself to its assigned role which does not include legislating.")

## IV.  CONCLUSION

For all these reasons, Plaintiff's allegations that he received text messages from Fashion Nova fail to state a claim under 47 U.S.C. § 227(c). Because Plaintiff cannot cure this pleading deficiency by amendment, the Court should grant Fashion Nova's motion to dismiss without leave to amend.

Respectfully submitted,

/s/ *Artin Betpera*
Artin Betpera
BUCHALTER, APC
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
T: (949) 224-6422
abetpera@buchalter.com

/s/ *Manuel Herceg*
Manuel Herceg, Atty. No. 29956-06
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46240
T: (317) 713-3500
mherceg@taftlaw.com

*Counsel for Defendant Fashion Nova, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, I electronically filed the foregoing document with the Clerk of the Court using the electronic court filing system, which will provide notification of such filing to all counsel of record.

                                        /s/ *Artin Betpera*
                                        Artin Betpera