# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| WARREN RICHARDS, on behalf of himself and others similarly situated | : | CIVIL ACTION FILE NO. 25-cv-1145 |
| Plaintiff, | : | Judge: Tanya Walton Pratt |
| v. | : | Magistrate Judge: M. Kendra Klump |
| FASHION NOVA, LLC | : | |
| Defendant. | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY**

## Introduction

Defendant Fashion Nova asks this Court to halt this case entirely pending the outcome of the Seventh Circuit's appeal in *Steidinger, et. al. v. Blackstone Medical Services, Inc.*, 25-2398 ("*Blackstone*"). But this request comes before Chief Judge Tanya Walton Pratt, who only last year squarely rejected a nearly identical request for a stay pending appeal in *Doe v. University of Southern Indiana*, 2024 WL 3637789, at *6–9 (S.D. Ind. Aug. 2, 2024). There, Judge Pratt held that the movant had failed to show a likelihood of success on appeal, irreparable harm, or that the public interest justified halting the case. She emphasized that litigation should proceed to dispositive motions and trial even while certain issues were on appeal, because "[c]ontinuing the case and allowing the Court to rule on the summary judgment motions will simplify the issues in the case and streamline the case for trial." *Id.* at *8.

That same reasoning applies here with even more force. The law is well-settled that text messages qualify as "calls" under the TCPA. The Supreme Court, every circuit to consider the issue, and the FCC have so held, and Congress ratified that interpretation in the TRACED Act. Defendant's speculation that the Seventh Circuit might reach a contrary conclusion in *Blackstone* does not justify freezing this case indefinitely. As Judge Pratt held in *Doe*, speculation is not a substitute for the demanding showing required to justify a stay.

## Legal Standard

The standard for granting a stay pending appeal mirrors that for a preliminary injunction. Courts weigh four factors: whether the movant has made a strong showing of likelihood of success on the merits, whether the movant will suffer irreparable injury without a stay, whether issuance of the stay will substantially injure the other parties, and where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *A&F Enters., Inc. II v. IHOP Franchising LLC*,

1

742 F.3d 763, 766 (7th Cir. 2014). As Judge Pratt emphasized in *Doe*, "the burden to obtain a stay" rests on the party requesting it, and failure to address the required factors weighs strongly against granting relief. 2024 WL 3637789, at *7.

## Argument

I.  **Defendant cannot establish a likelihood of success on appeal**.

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003); *Chennette v. Porch.com*, 50 F.4th 1217, 1223 (9th Cir. 2022). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

Defendant's request for a stay hinges on its assertion that the TCPA's private right of action under § 227(c)(5) does not extend to text messages. That argument has been squarely rejected by every authoritative source. In *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), the Supreme Court made clear that "a text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"

2

The TCPA's Do Not Call List provisions grant the FCC broad authority "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Unless otherwise defined, statutory text is given its "ordinary meaning" in the relevant context "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). As both the FCC and courts have long recognized, the ordinary meaning of the Do Not Call List provision authorizes the FCC to protect cell phone subscribers. *See, e.g.*, *Chennette v. Porch.com*, 50 F.4th 1217, 1223–1225 (9th Cir. 2022); 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14014, 14037 ¶¶ 33–36; *Cacho v. McCarthy & Kelly, LLP*, 739 F. Supp. 3d 195, 203 n.4 (S.D.N.Y. 2024) (collecting cases).

Start with what the statute prohibits: unwanted "telephone solicitations." 47 U.S.C. § 227(c)(3). "Telephone solicitation" is a defined term in the TCPA. *Id.* § 227(a)(4). In essence, it means "a telephone call or message" "which is transmitted to any person" for commercial purposes, subject to certain exceptions. *Id.*[1] Solicitations to cell phones fit that definition. First, to state the obvious, a cell phone is a "telephone." *See, e.g.*, 47 U.S.C. §§ 227(b)(1)(A)(iii) (using the phrase "cellular telephone"). Congress's use of the word "transmitted" also conveys no preference: "Transmit" means "to send a signal *by radio waves or by wire*." Transmit, Webster's College Dictionary (1991) (emphasis added). And Congress's use of the word "message" also suggests that Congress had no particular technology in mind: "Message" means "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*, from one person to

---

[1] Here is the full definition: "The term 'telephone solicitation' means the initiation of *a telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, *which is transmitted to any person*, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4) (emphases added).

3

another." Black's Law Dictionary, 6th Ed. (1991) (emphasis added). Finally, "any person" has a "naturally broad and inclusive meaning." *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978).

To enforce the Do Not Call List, § 227(c) authorizes recipients of unwanted "telephone solicitations" to sue for violations of the FCC's rules. 47 U.S.C. § 227(c)(5). In relevant part, that private right of action provision says that suit may be brought by anyone who "has received more than one telephone call within any 12-month period … in violation of the regulations." *Id.*

Defendant contends that because the private right of action provision uses the word "call," and because the Do Not Call List provisions do not use the specific terms "text message" or "SMS message," Congress did not intend for the Do Not Call List protections to cover text messages. Defendant gets the statute wrong. The Do Not Call List provisions authorize the FCC to regulate "telephone solicitations," a defined term that plainly includes text messages. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F). And the private right of action has the same scope as those other provisions.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *See infra* and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("we hold that a text message is a 'call' within the TCPA"). That interpretation follows from "the ordinary, contemporary, common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" alone weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed *all* sorts of communication,

4

both spoken *and* written. *See* Black's Law Dictionary, 6th Ed. ("any notice, word, or communication, no matter the mode and no matter how sent, from one person to another").[2]

More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction, *as the Seventh Circuit has already held in a TCPA case about text messages this year*. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025). So Congress presumably referred to "call or message" disjunctively to broadly capture a wide range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

To be sure, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call or message." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress

---

[2] *See also, e.g.*, Webster's College Dictionary (1991) ("a communication delivered in writing, speech, by means of signals, etc."); Oxford English Dictionary, 2d Ed. (1989) ("a communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another"); Oxford American Dictionary (1980) ("a spoken or written communication").

would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated. Section 227(c)(5)'s grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day. As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at

6

395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

"In addition to the Supreme Court and the FCC, **Congress** has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added) (citing *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in §227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). Specifically, when Congress amended the TCPA in 2019 with the Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (the "TRACED Act"), it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969); citing *Bell v. New Jersey*, 461 U.S. 773, 785, and n.12 (1983)). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit

7

reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

Defendant relies on *Jones v. Blackstone Medical Services, LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025) and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)—to argue that text messages fall outside the scope of 47 U.S.C. § 227(c)(5). These cases are outliers and provide no basis to alter this Court's analysis as the cases continue to relate to Defendant's contention that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages.

In *Davis*, the court applied the wrong standard of review, relying instead on *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025). *See* 2025 U.S. Dist. LEXIS 167366, at *9 (N.D. Fla. Aug. 26, 2025). The applicable standard is not "appropriate respect" as the *Davis* court held, but instead an inquiry into whether the FCC acted reasonably and reasonably explained its exercise of discretion. Such is the case here because Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1) (titled "Protection of Subscriber Privacy Rights"). Indeed, "Congress vested the FCC with considerable authority to implement the Telephone Act." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010). In furtherance of that goal, Congress directed the FCC to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1123 (11th Cir. 2014) ("Moreover, **Congress has conferred upon the FCC general authority to make rules and**

8

***regulations necessary to carry out the provisions of the TCPA***.")(emphasis added). Because the FCC exercised its discretion granted by the statute, the Administrative Procedure Act's deferential arbitrary-and-capricious standard. To be sure, "[t]he scope of this review 'is narrow,' and [we] must exercise appropriate deference to [the FCC's] decisionmaking and not substitute [our] own judgment for that of the [Commission]." *Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) (quoting *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025). Under this standard, it cannot be said that the FCC's action was unreasonable or not reasonably explained.

In fact, in *Jones v. Blackstone Med. Servs., LLC*, the court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is used in the TCPA — ***is an eminently reasonable one***, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied). Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

9

Most importantly, the Seventh Circuit itself has already recognized that text messages fall squarely within the TCPA's scope. In *Hulce v. Zipongo, Inc.*, 723 F. Supp 3d. 669, 673 (7th Cir. 2025), the court held that a marketing text message could support liability under the statute when it held:

> The FCC has promulgated a regulation under the TCPA providing [**7] that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2). In relevant part, both the TCPA and the FCC regulation define "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).
>
> Foodsmart contends that because its calls and messages were for the purpose of providing plaintiff with information about a free service available to him through his health plan, they were not initiated for the purpose of encouraging the purchase of any property, good, or service. Plaintiff does not dispute that the Foodsmart services being promoted in the calls and messages would have been free to him. However, he contends that because his health insurer would have paid for the services had he accepted them, the calls and messages were initiated for the purpose of "encouraging the purchase" of Foodsmart's services.
>
> The parties' arguments present [**8] a question of statutory interpretation. To answer it, I must begin with the statue's text. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74, 143 S. Ct. 665, 214 L. Ed. 2d 434 (2023). The key words in the text are "encouraging" and "purchase." In the context of the statute, the verb "encouraging" means "to attempt to persuade" or "urge." Merriam-Webster Online Dictionary (last viewed March 18, 2024). "Purchase," in turn, is used as a noun to mean 5 "an act or instance of purchasing." *Id.* And the verb "purchasing," in this context, means "to obtain by paying money or its equivalent." *Id.* Putting these terms together, the purpose of the call or message must be to urge someone to pay money or its equivalent for a good or service.
>
> In the present case, there is no doubt that the purpose of the calls and messages to plaintiff was to urge him to utilize Foodsmart's nutritional services.

10

That controlling decision directly forecloses Defendant's argument that the statute's private right of action does not apply to text solicitations. Defendant's position is not just contrary to the consensus nationwide; it is inconsistent with binding Seventh Circuit authority.

In short, Defendant cannot show any likelihood—let alone the "strong showing" required—that its narrow reading of § 227(c)(5) will prevail. The statutory text, the Supreme Court's binding recognition that text messages are "calls," the consistent decisions of multiple circuits, the FCC's longstanding rules, and Congress's ratification in the TRACED Act all point in the same direction: the Do Not Call List provisions apply to unsolicited text messages. Defendant's attempt to argue otherwise misreads the statute, ignores binding precedent, and discounts decades of regulatory practice. As Judge Pratt emphasized in *Doe v. University of Southern Indiana*, a movant's failure to substantively engage with the governing factors or show a genuine likelihood of success "weighs against a stay." 2024 WL 3637789, at *7. That principle applies squarely here. This first and most important factor decisively weighs against granting Defendant's motion.

## II.     The Defendant has not Shown Irreparable Harm.

Defendant also fails to show that it will suffer irreparable harm absent a stay. Its only assertion is that litigating a putative class action is burdensome and costly. But ordinary litigation costs do not constitute irreparable injury. As Judge Pratt explained in *Doe*, "[t]he possibility of additional litigation expense is not the type of irreparable harm that justifies a stay." 2024 WL 3637789, at *7. This Court has already demonstrated its ability to manage its docket efficiently by vacating deadlines when appropriate to preserve resources. Defendant cannot plausibly argue that routine litigation activity—discovery, motion practice, and eventual trial—rises to the level of irreparable injury.

### III. A Stay Would Prejudice Plaintiff and the Putative Class

While Defendant cannot show irreparable harm, Plaintiff and the putative class would face significant prejudice if this case were frozen. Plaintiff has alleged repeated unwanted text messages, precisely the kind of invasive conduct Congress sought to prevent through the TCPA.

Delaying the case would postpone relief not only for Plaintiff but also for millions of consumers whose privacy rights Congress intended to protect. *See, e.g.*, *Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate").

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *See, e.g.*, *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As such, courts regularly permit plaintiffs to

commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See, e.g.*, *Cooley v. Freedom Forever LLC et. al.*, No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014).

Plaintiff will also be prejudiced by a stay because, "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, 2009 No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009).

As Judge Pratt observed in *Doe*, continuing litigation while appeals proceed "will simplify the issues in the case and streamline the case for trial." 2024 WL 3637789, at *8. The same logic applies here: moving forward will refine the issues and promote judicial efficiency, whereas granting a stay would only compound the harm to consumers and allow Defendant to continue benefiting from unlawful practices.

### IV.     The Public Interest Strongly Favors Proceeding

The public interest also weighs heavily against a stay. The TCPA was enacted to protect consumer privacy and deter unwanted telemarketing practices. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019). Granting a stay here would undermine those statutory goals, delay resolution for affected consumers, and frustrate Congress's objectives. Judge Pratt underscored in *Doe* that "there is a public interest in judicial economy and preventing prolonged proceedings." *Id.* Allowing this case to move forward advances those interests, while staying it

13

would clog the Court's docket with unresolved matters and postpone vindication of important statutory rights.

## V. Defendant's Reliance on Landis is Misplaced.

Finally, Defendant invokes *Landis v. North American Co.*, 299 U.S. 248 (1936), suggesting that efficiency justifies a stay. But as Judge Pratt emphasized in *Doe*, *Landis* does not authorize indefinite delay simply because another case might be relevant. 2024 WL 3637789, at *6–8. The Seventh Circuit's decision in *Blackstone* may take years and will not necessarily control this Court's resolution of Plaintiff's claims. To stay this case based on speculation about another appeal would contradict Judge Pratt's own recent precedent, which rejected precisely that approach.

## Conclusion

Defendant has not carried its burden to justify the extraordinary remedy of a stay. It cannot demonstrate a likelihood of success on the merits because the statutory text, Supreme Court precedent, multiple circuits, the FCC's rules, and Congress's ratification all confirm that text messages are "calls" under the TCPA. It cannot show irreparable harm, because ordinary litigation expense is not injury at all, much less irreparable. A stay would prejudice Plaintiff and the putative class by delaying relief for ongoing invasions of privacy, and the public interest—rooted in judicial economy and in the protection of consumers from unwanted solicitations—weighs strongly in favor of allowing this case to proceed.

Chief Judge Pratt has already confronted a nearly identical request in *Doe v. University of Southern Indiana*, 2024 WL 3637789 (S.D. Ind. Aug. 2, 2024), and held that a party's failure to establish these factors requires denial. The same reasoning applies with full force here. For the

reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Stay in its entirety and allow this case to move forward toward resolution on the merits.

Dated: September 5, 2025                    /s/ Anthony I. Paronich
                                            Anthony I. Paronich
                                            PARONICH LAW, P.C.
                                            350 Lincoln Street, Suite 2400
                                            Hingham, MA 02043
                                            Tel: (617) 485-0018
                                            Fax: (508) 318-8100
                                            anthony@paronichlaw.com