**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| WARREN RICHARDS, on behalf of himself and others similarly situated | : | CIVIL ACTION FILE NO. 25-cv-1145 |
| | : | |
| Plaintiff, | : | Judge: Tanya Walton Pratt |
| | : | |
| v. | : | Magistrate Judge: M. Kendra Klump |
| | : | |
| FASHION NOVA, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____/ | | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

I. Legal Background ......................................................................................... 3

II. Factual Background ..................................................................................... 5

LEGAL STANDARD ........................................................................................... 5

ARGUMENT ....................................................................................................... 6

I. The Do Not Call List provisions in TCPA Section 227(c) authorize the FCC to prohibit text messages ........................................................................................ 6

a. The plain meaning of the word "call" includes text messages ...................... 6

b. That interpretation of the word "call" aligns § 227(c)(5) with its substantive provisions ............................................................................................................. 11

c. Fashion Nova's attempt to push a narrower interpretation is unpersuasive ............. 13

d. The TRACED Act's later definitions do not narrow § 227(c)'s scope ........................ 19

II. Applying § 227(c) to text messages is statutory interpretation, not judicial legislation ............................................................................................................. 20

III. Any doubt that § 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation ..................................................................... 22

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill. 2009) ........................................ **8, 19**

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union*, 708 F.3d 737 (6th Cir. 2013) ...................... **7**

*Barton v. Delfgauw*, 2025 WL 2402131 (W.D. Wash. 2025) .................................................. **25**

*Bosley v. A Bradley Hospitality, LLC*, 2025 WL 2686984 (S.D. Fla. 2025) ............................ **10**

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ................................ **11**

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .......................................................... **10**

*Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025) .................................... **14–18**

*Dawson v. Porch.com*, 2024 WL 4765159 (W.D. Wash. 2024) ......................................... **17, 21**

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ................................................................ **13, 20–22**

*Gager v. Dell Fin. Servs.*, 727 F.3d 265 (3d Cir. 2013) ...................................................... **25**

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) ................................................ **11**

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ......................................... **8, 21**

*Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339 (7th Cir. 2017) (en banc) .............................. **13**

*Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513 (M.D.N.C. 2024) .............................. **9**

*Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025) ..................................................... **4, 10, 23**

*Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860 (7th Cir. 2016) ............................................ **6**

*Jones v. Blackstone Med. Servs.*, 2025 WL 2042764 (C.D. Ill. 2025) ................................ **13–16**

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) .......................................... **4**

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ................................ **9**

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010)

.............................................................................................................................. **1, 7–9, 13**

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ................................3, 9, 22–25

*McLaughlin Chiropractic Assocs. v. McKesson Corp.,* 606 U.S. 146 (2025) ......................... 22

*Nat'l Cable & Telecom Ass'n v. FCC*, 567 F.3d 659 (D.C. Cir. 2009) ................................... 14

*New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019) .......................................... 3, 15, 20

*Pepper v. GVG Capital LLC,* 677 F. Supp. 3d 638 (S.D. Tex. 2023) ................................. 12, 21

*Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025) ............................ 23

*Riley v. California*, 573 U.S. 373 (2014) ............................................................ 20

*Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946 (9th Cir. 2009) ........................... 1, 6–7, 20

*Schaevitz v. Braman Hyundai, Inc.,* 437 F. Supp. 3d 1237 (S.D. Fla. 2019) ........................ 7

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.,* 145 S. Ct. 1497 (2025) ....................... 24

*Squillacote v. United States,* 739 F.2d 1208 (7th Cir. 1984) ................................. 13, 20

*U.S. Telecom Ass'n v. FCC*, 825 F.3d 674 (D.C. Cir. 2016) ................................... 23

*Wilson v. Medvidi, Inc.,* 2025 WL 2856295 (N.D. Cal. 2025) ......................... 1, 4, 7, 12, 17, 21

*Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. 2025) ................................ 1, 12, 21, 25

*Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) ................................... 13, 20

**Statutes and Regulations**

**47 U.S.C. § 227(a)(4)** .......................................................... 3, 11, 20

**47 U.S.C. § 227(b)** ......................................................... 7–8, 17, 21

**47 U.S.C. § 227(c)** ......................................................... 3–5, 11, 22–23

**47 U.S.C. § 227(e)** ......................................................... 18–19

**47 C.F.R. § 64.1200(c)(2), (e)** ........................................... 3, 5, 24

**Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348 (2018)** ................................ 18–19

**TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019)** ....................................... 19

**Other Authorities**

**18 FCC Rcd. 14014 (2003)** ........................................................................ **5, 8–9, 24**

**30 FCC Rcd. 7961 (2015)** ............................................................................ **5, 9, 24**

**38 FCC Rcd. 12247 (2023)** .......................................................................... **5, 17, 24**

**88 Fed. Reg. 20800 (Apr. 7, 2023)** ............................................................. **5, 9**

**Webster's College Dictionary (1991)** .......................................................... **7**

**Oxford English Dictionary, 2d ed. (1989)** ................................................. **7**

**Black's Law Dictionary (6th ed. 1990)** ...................................................... **12**

## <u>INTRODUCTION</u>

A law enacted in 1991 that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist yet when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both the FCC and courts have long recognized, the plain meaning of the word "call" in the TCPA encompasses any attempt to communicate by phone, "regardless of whether that call is communicated by voice or text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see* 18 FCC Rcd. 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. 2025); *Wilson v. Skopos Fin.*, *LLC*, 2025 WL 2029274, at *4–5 (D. Or. 2025).[1]

The structure and purpose of the TCPA's Do Not Call List provisions reinforce that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010) (St. Eve, J.). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" for a commercial purpose; that broadly inclusive language encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*,

---

[1] *See also Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (reviewing a claim that texts were unwanted "telephone solicitations" that violated the FCC's Do Not Call List rules).

2025 WL 2856295, at *3. And the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC, which means that any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E); *see Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant Fashion Nova, LLC's motion to dismiss argues otherwise, mainly by insisting that no one would describe a text message as a telephone call in modern parlance. But that's not how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuitions." *New Prime, Inc. v. Oliviera*, 586 U.S. 105, 114 (2019). In fact, modern parlance can be downright misleading when times have changed. *See id.* at 114–16.

Fashion Nova's argument also hinges on a single use of the word "call" in the provision creating a private right of action to enforce the Do Not Call List rules. Yet the company fails to explain why the reference in the private-action provision should be construed more narrowly than the Do Not Call List rules that it exists to enforce. And it also cannot explain why the word "call" would have a different meaning there than it has in the TCPA's nearby autodialer provisions. Congress used the word "call" in those provisions to describe written messages received on a pager—the most analogous technology to text messaging that existed in 1991. *See* 47 U.S.C. § 227(b)(1)(A)(iii). If a text "call" to a pager can violate the TCPA, a text "call" to a cell phone can too. *See Lozano*, 702 F. Supp. 2d at 1004–05.

Once Fashion Nova's flawed interpretation of the statute is set straight, the analysis here is straightforward: Plaintiff Warren Richards received multiple unwanted marketing texts from Fashion Nova and those texts indisputably violated the FCC's Do Not Call List rules. *See* 47

C.F.R. § 64.1200(c)(2), (e). Mr. Richards therefore "received more than one telephone call within any 12-month period … in violation of the regulations," and may sue to enforce his "privacy rights to avoid receiving telephone solicitations" that he has made clear he does not want. 47 U.S.C. § 227(c)(1), (5).

This Court should deny the motion to dismiss.


## **BACKGROUND**

### I.     **Legal Background**

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List, and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4).

The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or service, which is transmitted to any person." *Id.* § 227(a)(4). As one court recently observed, that definitional language is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Wilson v. Medvidi, Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. 2025); *see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).

The statute grants the FCC broad discretion to determine the rules governing the Do Not Call List. The statute expressly empowers the FCC to make rules "that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C.

§ 227(c) (1)(E) (emphasis added). And it directs the FCC to evaluate alternative approaches based on open-ended criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c) (1)(A).

Any Do Not Call List regulations that the FCC establishes must meet certain statutory criteria. *See id.* § 227(c)(3)–(4). For example, the rules must require phone companies to notify their subscribers about the Do Not Call List, and must specify how frequently the list will be updated. *Id.* § 227(c)(3)(B), (I). And—as relevant here—the statute specifies that the FCC's rules must "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in" the national Do Not Call List. *Id.* § 227(c)(3)(F).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. That provision grants an express private right of action to sue in federal court to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" conferred by section 227(c). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

The FCC has implemented section 227(c)(3)(F) by adopting 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." The FCC has also made clear in a series of orders and, more recently, in a formal regulation that this rule applies to anyone "making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see* 18 FCC Rcd. 14014, 14115 ¶ 165

(2003); 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (2015); *In re: Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018); 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023).[2]

## II.    Factual Background

As alleged in the Complaint (ECF No. 1 ¶¶ 8–16), Mr. Richards uses cellular number (765) 748-XXXX as his personal, residential line. He registered that number on the national Do Not Call Registry on March 25, 2025, to avoid unwanted telemarketing (ECF No. 1 ¶ 15). Nonetheless, beginning in May 2025 — more than thirty days after registration — Fashion Nova sent him numerous promotional text messages advertising sales and discounts (ECF No. 1 ¶¶ 16–18). Representative messages are reproduced in the complaint (ECF No. 1 at pp. 3–4) showing repeated marketing solicitations sent over several weeks. Mr. Richards never provided consent, requested information, or maintained any relationship with Fashion Nova (ECF No. 1 ¶¶ 20–22). Each message invaded his privacy and caused the precise harm that the TCPA was enacted to prevent (ECF No. 1 ¶ 23).

## LEGAL STANDARD

On a Rule 12(b)(6) motion, a court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff to determine whether the complaint states a facially plausible claim for relief. *See, e.g.*, *Williamson v. Indiana*, 2025 WL 2299511, at *5 (S.D. Ind. 2025) (Pratt, J.).

---

[2] The FCC's interpretation of the word "call" was first discussed in the context of the TCPA's nearby prohibitions on autodialed calls, found in section 227(b). *See* 18 FCC Rcd. at 14115 ¶ 165. But the FCC has since clarified that it applies to section 227(c), too. *See* 38 FCC Rcd. at 12256–57 ¶ 26.

# ARGUMENT

Fashion Nova contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. The context and purpose of the TCPA's Do Not Call List provisions reinforce that interpretation. And Fashion Nova's arguments for its restrictive interpretation all fail—the company goes about interpreting the word "call" in section 227(c)(5) all wrong, and ends up assigning it a meaning that is at odds with the rest of the statute in multiple ways.

Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

## I.     The Do Not Call List provisions in TCPA Section 227(c) authorize the FCC to prohibit text messages.

### a.   The plain meaning of the word "call" includes text messages

To interpret a statutory term, courts "look to the meaning of the word at the time the statute was enacted, often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016). Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting Webster's Third

New International Dictionary (2002)); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010) (St. Eve, J.) (same). This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, Webster's College Dictionary (1991) ("to communicate or try to communicate with by telephone"); Oxford English Dictionary, 2d Ed. (1989) ("a summons or communication by telephone").

Courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Sagar v. Kelly Automotive Grp.*, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). And texting is, of course, a means of communicating with someone by telephone. So that established definition readily encompasses texts. *See, e.g.*, *Satterfield*, 569 F.3d at 953–54; *Lozano*, 702 F. Supp. 2d at 1007; *Wilson v. Medvidi*, 2025 WL 2856295, at *2 (N.D. Cal. 2025).

That established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning across different provisions of a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). Here, the word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any

telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[3] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *4 (N.D. Ill. 2009). Both the FCC and courts have therefore long held that section 227(b)'s autodialer protections apply to texts as well as traditional voice calls. *E.g.*, *Lozano*, 702 F. Supp. 2d at 1003–09.[4]

Indeed, the FCC determined as early as 2003 that, when the TCPA says "call," it must mean not just traditional voice calls but also modern text messages. 18 FCC Rcd. 14115 ¶ 165 (2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *Id.*  The FCC has consistently adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (2015); *In re: Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018); 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023).

---

[3] *See, e.g.*, Paging Network, Inc., Annual Report, at 8 (1991), https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

[4] *See also, e.g.*, 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023); 18 FCC Rcd. 14115 ¶ 165 (2003); *Satterfield*, 569 F.3d at 952–54; *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370–71 (6th Cir. 2015); *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513, at *7 n.6 (M.D.N.C. 2024) ("Courts have routinely found that the phrase 'call' in subsection (b) of the statute includes text messages.").

To be sure, the FCC first interpreted the word "call" to include text messages in the context of the TCPA's prohibitions on autodialed calls in section 227(b). But that is unsurprising, because the word "call" is used more extensively in that part of the statute, whereas section 227(c) mainly uses the defined term "telephone solicitation." *See Medvidi*, 2025 WL 2856295, at *3. And the FCC has since confirmed in a formal regulation that its 2003 interpretation of the word "call" also applies to text messages in the Do Not Call List context, specifically. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. at 12256–57 ¶ 26.

Although it is only briefly discussed in the relevant order, the FCC's initial interpretation of the word "call" to include texts in 2003 is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. 14115 ¶ 165 (2003). When Congress originally drafted the TCPA, text messages didn't exist. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve widespead popularity until the 2000s.[5] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect").

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text

---

[5] *See, e.g.*, David Crystal, Txtng: The Gr8 Db8 11 (2008) ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, Texting Overtakes Voice in Mobile Phone Usage, Wired (Sept. 29, 2008), https://www.wired.com/2008/09/texting-overtak (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

message to a cellular telephone, it is undisputed, qualifies as a 'call' … .").  And that has remained true even after the *McLaughlin* and *Loper Bright* decisions that Fashion Nova says (at 3) should be causing a sea change.  *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (taking as a given that texts can be actionable "telephone solicitations" under section 227(c)).[6]

The FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3.

### b. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.

Fashion Nova's motion to dismiss centers on its contention that the private right of action in section 227(c)(5) applies only to "telephone calls," and therefore cannot encompass text messages. See MTD at 5–9 (ECF No. 16).  But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions elsewhere in section 227(c) provides additional confirmation that text messages are covered.

To see why, start with what is the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are communications "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers. The FCC determined that cell phone subscribers are covered when it first created the Do Not Call

---

[6] *See also, e.g.*, *Bosley v. A Bradley Hospitality, LLC*, 2025 WL 2686984, at *5 (S.D. Fla. 2025); *Dawson v. Porch.com*, 2024 WL 4765159, at *5 & n.4 (W.D. Wash. 2024) (agreeing that a text is a call "whether deference to the agency's interpretation is appropriate or not").

List rules. *See* 18 FCC Rcd. 14014, 14037–38 ¶¶ 33–36 (2003). And courts have overwhelmingly agreed with that interpretation of the statute ever since. *See, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at \*2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be "transmitted." *See, e.g.*, *Transmit*, Webster's New Collegiate Dictionary (9th ed. 1991) ("to send out (a signal) either by radio waves or over a wire"). And the "telephone solicitation" definition's reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, the "the ordinary, contemporary, and common meaning" the word "call" in the TCPA encompasses text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message is "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990) (emphasis added); *see also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication *in writing*, in speech, by signals") (emphasis added); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added). So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of

commercial transactions.  47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce*, 132 F.4th 493 (Do Not Call List liability turned on whether a text message had the requisite commercial purpose). At the same time, the statute uses broad and inclusive language to describe the myriad ways such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of potential communication mediums, including text messages. *See Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'").[7] The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3.

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Medvidi*, 2025 WL 2856295, at *3; *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). Indeed, nothing in the statute gives

---

[7] *See also, e.g.*, *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 312 (1978) ("any person" has a "naturally broad and inclusive meaning"); *United States v. Krilich*, 159 F.3d 1020, 1028 (7th Cir. 1998) (statute that used "any" multiple times was "straightforward and broad").

any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### c. Fashion Nova's attempt to push a narrower interpretation is unpersuasive.

Fashion Nova would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word "call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments mainly rely on *Jones v. Blackstone Medical Services*, 2025 WL 2042764 (C.D. Ill. 2025), and will presumably rely on reply on the more recently decided *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025). But none of the arguments made by Fashion Nova or those cases is persuasive.

Consider first how Fashion Nova reads the word "call" in section 227(c)(5). It contends the term is limited to voice calls (not texts) based on the statute's 1991 vintage and ordinary usage. See ECF No. 16 at 1–2, 6–8. First, Fashion Nova argues that because text messaging was not an available technology in 1991, Congress could not have intended "telephone call" to encompass text messages, citing *Jones v. Blackstone Medical Services*, 2025 WL 2042764, at *4. See ECF No. 16 at 6–7.

That's not how statutory interpretation works. Of course, text messaging did not exist in 1991, so Congress didn't have it specifically in mind. *See Medvidi*, 2025 WL 2856295, at *2. But it is black-letter law that statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980); *see also, e.g.*, *Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 344–45 (7th Cir. 2017) (en banc). Instead, "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 3d at 1008 (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984)).

Indeed, "[w]hile every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why, for example, "a 1925 statute dealing with 'news media' … appl[ies] to television." *Squillacote*, 739 F.2d at 1213. Or why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See id.* (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. In other words, the 1991 meaning of the word "call," which "refers to both oral and written communications," is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007. And that remains true even if text messages were not the "particular manifestation of [the] problem" that Congress had front of mind at the time. *Nat'l Cable & Telecom Ass'n v. FCC*, 567 F.3d 659, 665 (D.C. Cir. 2009); *see Diamond*, 447 U.S. at 315; *Hively*, 853 F.3d at 344–45.

Fashion Nova insists that the plain text of section 227(c)(5) is unambiguous and that "telephone call" can only mean a real-time voice call. See ECF No. 16 at 5–9. But the statute's language and context show otherwise. The TCPA's text in 1991 already encompassed all forms of telephone communication, and its broad phrasing continues to cover modern text messages without any need to "rewrite" or expand the statute. See supra, Part I.A–B.

Next, Fashion Nova argues that, in "modern parlance," it would sound unnatural to describe a text message as a "telephone call." See ECF No. 16 at 7. That argument mirrors the reasoning in *Jones v. Blackstone Medical Services, LLC*, 2025 WL 2042764, at *4 (C.D. Ill. 2025), and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *1 (N.D. Fla. 2025), where both

14

courts concluded that the term "call" could not encompass text messages based on present-day usage alone.

No doubt most people wouldn't use the word "call" the way the TCPA does in casual conversation, especially nowadays. In 2025, text messages are ubiquitous, and society has developed a whole vocabulary around them—think "emoji," "group chat," "read receipt," and so forth. As part of that texting-specific lexicon, we have become very accustomed to saying "text message" or just "text" to describe written messaging between phones.

But statutory interpretation does not turn on modern colloquial usage. If anything, when language has evolved since a statute's enactment, current linguistic intuitions may be affirmatively misleading. For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that the statutory term "contracts of employment" in the Federal Arbitration Act "might call to mind only agreements between employers and employees" today, and thus exclude independent contractors. 586 U.S. 105, 114 (2019). But that "modern intuition" did not match the "evidence of the term's meaning at the time of the Act's adoption," which revealed that "'contract of employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme Court therefore held that the statutory exception at issue reached not just conventional "employees," as modern parlance might suggest, but also modern independent contractors, as definitions from the time of the statute's enactment suggested. *See id.* at 114–16. In other words, when a mismatch arises between contemporary intuitions and the original meaning at the time of enactment, it is the latter that controls—not (as Fashion Nova's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 2025 WL 2491195, at *1, or "today's American parlance," *Jones*, 2025 WL 2042764, at *4.

15

Fashion Nova's interpretation fares no better when viewed in the broader statutory context of section 227(c). Although the company repeatedly invokes the statute's use of the term "telephone call," it barely engages with the substance of the Do Not Call List provisions that surround it. See ECF No. 16 at 8–9. Indeed, if Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so through the word "call" would have been a strange way to go about it. After all, the word "call" clearly *does* include textual communications in other provisions of the statute. *See supra*. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere *includes* them.

Because it's doubtful that Congress intended section 227(c)(5) to have a narrower scope than the Do Not Call List regulations it exists to enforce, the much better reading of "call or message" in section 227(a)(4) is that it instead signals Congress's intent to inclusively define the kinds of "telephone solicitations" that can be prohibited. *See supra*. It simply "makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3.

Fashion Nova also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA.

As explained above, the word "call" in that context clearly covers text messages, because it is used to describe a (typically text-focused) transmission to a "paging service." *Id.* § 227(b)(1)(A)(iii); *see supra*. Fashion Nova and the two decisions it will rely on therefore cannot, and do not, dispute the consensus that the word "call" includes text messages as it is used in the autodialer provisions. Instead, all they can say is that section 227(b) is a "different

provision" that could be "arguably broader" than section 227(c). *See Jones*, 2025 WL 2042764, at *4–5; *Davis*, 2025 2491195, at *2.

What's missing, however, is any credible reason to think that the word "call" *actually does* mean something broader in section 227(b) than it does in section 227(c). Unless there's a sound reason to think otherwise, a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. Fashion Nova identifies no reason why the meaning of "call" would differ between the two provisions. Nor does *Jones*. And the only possible distinction *Davis* can muster is to point out that 227(b) says it's unlawful to "to make any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call" (in section 227(c)(5)'s private right of action) or a telemarketing "telephone call or message" (in the definition of "telephone solicitation" in section 227(a)(4)). But it's not clear why the addition or the subtraction of the modifier "telephone" would have any bearing on the question. Fashion Nova hasn't disputed that a text is a "telephone communication; of course it is. And whatever work "any" might be doing in section 227(b)(1)(A), *Davis* does not account for similarly broad and inclusive terminology in section 227(c), such as requiring the FCC to "prohibit *any* person from making *or transmitting* a telephone solicitation to the telephone number of *any* subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F) (emphases added); *see supra*, Part I.B.

To the contrary, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. As the FCC recently explained, it would be "anomalous" to give the word "call" a narrower meaning in section 227(c)(5) than it has elsewhere in the TCPA. 38 FCC Rcd. at 12257 ¶ 27. And, again, Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. *See supra*, Part I.C.2.a. So

"there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson*, 2024 WL 4765159, at *5.

Finally, Fashion Nova says that an entirely separate provision that was added to the statute in 2018 shows that section 227(c)(5) distinguishes between calls and text messages. Namely, Fashion Nova cites definitions of "caller identification" that were added by the Consolidated Appropriations Act of 2018. Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1091 (2018); *see* 47 U.S.C. § 227(e)(8)(A)–(B). Those provisions prohibit false or misleading "caller identification information," defined as information about the source of "a call made using a voice service or a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A). Fashion Nova says that this shows that a "call" and a "text message" are distinct.

But, if anything, section 227(e)(8) actually shows the opposite: It reinforces that texts *are* calls in the lexicon of the TCPA. After all, section 227(e) describes a "text message" as something that is done by a "caller," just like a traditional voice call is. So the more natural takeaway from section 227(e)(8) is that it identifies two different types of calls—voice calls and text messages—both of which originate with a "caller" and therefore require "caller identification." *Id.* Unlike Fashion Nova's interpretation, that reading of section 227(e)(8) accords with the meaning of "call" as that word is used elsewhere in the TCPA. *See supra*.

In any event, even if section 227(e) did distinguish between a "text message" and a "call" as Fashion Nova contends, that would not change the best reading of section 227(c). When Congress enacted section 227(e)'s caller identification rules in 2018, Congress directed that nothing therein "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Pub. L. No. 115–141, 105 Stat. 348, § 503. That would include the FCC rules and orders that interpreted "call" to include text messages.

Moreover, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *S. Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998); *see also Abbas*, 2009 WL 4884471, at *5 ("Subsequent legislation provides at best an uncertain indicator of previous congressional intent … ."). Surely, that's especially true here, where the Congress that enacted section 227(c) and the Congress that enacted section 227(e)(8) legislated on opposite ends of a seismic shift in phone technology. The more meaningful comparison is to the meaning of "call" in section 227(b), which was enacted at the same time as section 227(c), and which clearly uses "call" to refer to written messages. *See supra*, Part I.A.

### d.  The TRACED Act's later definitions do not narrow § 227(c)'s scope.

Fashion Nova relies on Congress's later amendments—particularly the TRACED Act—to argue that "calls" and "text messages" are distinct, and therefore § 227(c)(5) must exclude texts. See ECF No. 16 at 7–9. That gets the analysis backwards. The provisions it cites appear in § 227(e) and related amendments, which address caller identification and reporting; they do not amend § 227(c), much less its private right of action. See 47 U.S.C. § 227(e)(8)(A)–(C); Pub. L. No. 115-141, div. P, § 503(a), 132 Stat. 348, 1091 (2018); see also TRACED Act, Pub. L. No. 116-105, 133 Stat. 3274 (2019). Those later provisions presuppose that a text "is sent by a caller," treating voice calls and text messages as two modalities of the same telephone-based solicitation problem that the TCPA has always targeted. See 47 U.S.C. § 227(e)(8)(A)–(C).

In any event, Congress directed that these later amendments are not to be construed to modify or limit the FCC's existing TCPA rules and orders. *See* Pub. L. No. 115-141, § 503; see also Pub. L. No. 116-105. So even on Fashion Nova's own terms, the amendments cannot be read to narrow § 227(c). And, as the Supreme Court has cautioned, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *S. Dakota v. Yankton*

*Sioux Tribe,* 522 U.S. 329, 355 (1998); *see also Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *5 (N.D. Ill. 2009). The best reading remains the one grounded in the 1991 text: "call" covers telephone communications, including modern text messages.

## II.    Applying § 227(c) to text messages is statutory interpretation, not judicial legislation.

Fashion Nova insists that treating "telephone call" to include texts would impermissibly rewrite the statute. See ECF No. 16 at 5–9, 12. Not so. Courts routinely apply statutory language—fixed at enactment—to new applications as technology evolves. *See Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) (statutes are not "confined to the particular applications contemplated" at passage); *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114–16 (2019) (original public meaning controls, not modern parlance); cf. *Riley v. California*, 573 U.S. 373 (2014) (applying Fourth Amendment principles to smartphones). While every statute's meaning is fixed when enacted, "new applications may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018).

The Seventh Circuit has made the same point: a 1925 law about "news media" applies to television, and "no vehicles in the park" covers later-invented vehicles. *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984). Here, the ordinary 1991 meaning of "call" is to communicate by telephone. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 953–54 (9th Cir. 2009) (citing contemporary dictionaries); *Lozano v. Twentieth Century Fox Film Corp.,* 702 F. Supp. 2d 999, 1007 (N.D. Ill. 2010) (St. Eve, J.) (same). Text messaging is simply a later-developed mode of that same telephone communication. And the Do Not Call List provisions focus on purpose, not medium: Congress directed the FCC to protect privacy by prohibiting "telephone solicitations," defined as "the initiation of a telephone call or message … transmitted to any person" to encourage a commercial transaction. 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F).

That text is capacious. *See Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting argument that "text messages are not actionable" under § 227(c), given the statute's "call or message" language).

The TCPA's structure confirms it. Congress used "call" consistently across the statute, including in § 227(b), which from the start barred autodialed "call[s] … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). Pagers typically displayed written numeric messages—text—underscoring that "call" in the TCPA cannot be limited to live voice. *See Lozano*, 702 F. Supp. 2d at 1005; *Abbas v. Selling Source, LLC*, 2009 WL 4884471, at *4 (N.D. Ill. 2009). Absent a sound reason, the same word bears the same meaning across a statute. *Henson v. Santander Consumer USA Inc.,* 582 U.S. 79, 85 (2017). Fashion Nova offers none for reading "call" broadly in § 227(b) but narrowly in § 227(c)(5). Courts facing this precise argument have rejected it. *See Dawson v. Porch.com*, 2024 WL 4765159, at *5 (W.D. Wash. 2024) ("no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions"); *Wilson v. Medvidi, Inc*., 2025 WL 2856295, at *2–3 (N.D. Cal. 2025); *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4–5 (D. Or. 2025).

Finally, recognizing that § 227(c) reaches texts respects separation-of-powers principles rather than offends them. Courts are not "updating" the TCPA; they are applying Congress's chosen language, which was deliberately broad and paired with an express, flexible delegation to the FCC to implement privacy-protective rules "most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E); see § 227(c)(1)(A) (directing the Commission to weigh "effectiveness" and "other advantages and disadvantages"). That is precisely the sort of scheme courts have long understood to encompass new technologies. *See*

*Chakrabarty*, 447 U.S. at 315. Recognizing texts as "calls" within § 227(c) thus applies Congress's 1991 words to present-day facts; it does not amend them.

### III.    Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.

The best reading of the statute is that the word "call" includes texts. But if the language of the statute leaves the status of texts unresolved, that's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). As at least one other court has held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). So the FCC's longstanding and reasonable interpretation of the word "call" should still carry the day. *See id*.

To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to apply FCC interpretations; they can and should begin by making their own assessment of what the TCPA means. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). Fashion Nova contends that, after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), courts must interpret the TCPA "as if no agency were involved," giving the FCC's views only whatever persuasive weight they merit. See ECF No. 16 at 10–12 (quoting *Loper Bright*, 603 U.S. at 373, 400, 402). But that misstates *Loper Bright*. Even after that decision, courts still defer where Congress has expressly delegated interpretive authority to an agency—exactly what Congress did in § 227(c). See id. § 227(c)(1)(A), (E).

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency

interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. In the TCPA's Do Not Call List provisions, Congress didn't write the rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That language grants discretionary authority to "fill up the details," and uses open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). In the telecommunications context, especially, an express delegation like this one is evidence that Congress expected technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it." *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

It therefore would honor Congress's intent here to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395.

Exercising its expressly delegated authority, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. 12256–57 ¶¶ 26–27. That conclusion also aligns with the FCC's determination that cell phone numbers are eligible for protection, and that the statute's use of the word "call" confers protection from unwanted text messages in other TCPA contexts. 38 FCC Rcd. 12256–57 ¶¶ 26–27. And that reasonable interpretation of the word "call" is one that the FCC has consistently adhered to for more than two decades, dating back to the earliest years of the technology, when text messaging first became common. *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (2015); *In re: Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018).

The FCC's conclusion that text messages are "calls" and that its Do Not Call List rules therefore have the same scope as other TCPA protections is "reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1497, 1511 (2025). When *Chevron* governed, courts consistently deferred to the FCC's reasonable interpretation of "call" under the TCPA. See, e.g., *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (granting the FCC *Chevron* deference to hold that a text message is a "call" within the TCPA); *Gager v. Dell Fin. Servs.*, 727 F.3d 265 (3d Cir. 2013) (similar). Fashion Nova now argues, relying on *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), that courts must interpret the statute "as if no agency were involved." See ECF No. 16 at 10–12. After *Loper Bright*, there are many cases where agencies' reasonable decisions are no longer entitled to deference, but this is not one of them. The FCC's judgment about the status of text messages under its rules remains within authority that the TCPA "explicitly delegates" to the agency, and it remains reasonable—so it remains worthy of deference. *Skopos Fin.*, 2025 WL 2029274, at *4;

*see also Barton v. Delfgauw*, 2025 WL 2402131, at *3 n.1 (W.D. Wash. 2025) (after *Loper Bright*, continuing to apply *Satterfield*'s conclusion that the FCC's judgment is entitled to deference).

Alternatively, the FCC's interpretation should—at the very least—be accorded "great weight." *Loper Bright*, 603 U.S. at 388 (citing *Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944)). The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with "the power to persuade." *Id.*; *Skidmore*, 323 U.S. at 140. The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388; *see Medvidi*, 2025 WL 2856295, at *3 (accepting the FCC's interpretation as evidence of "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage").

## **CONCLUSION**

The TCPA's text, structure, and purpose make clear that the Do Not Call List rules apply to text messages, and § 227(c)(5) authorizes private suits to enforce those rules. Fashion Nova's contrary reading depends on modern colloquial usage, disregards the statute's contemporaneous meaning and design, and cannot be squared with the FCC's reasonable and longstanding interpretation under Congress's express delegation. The motion to dismiss should be denied in full.

Dated: October 20, 2025

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com