# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WARREN RICHARDS, *on behalf of himself and all others similarly situated,* | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No: 1:25-cv-01145-TWP-MKK |
| | ) Hon. Tanya Walton Pratt |
| FASHION NOVA, LLC, | ) |
| Defendant. | ) Hon. Magistrate M. Kendra Klump |
| | ) **ORAL ARGUMENT REQUESTED** |

# REPLY IN SUPPORT OF
# FASHION NOVA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

## PRELIMINARY STATEMENT

The only issue at hand is the scope of the term "telephone call" as used in 47 U.S.C. § 227(c)(5). This is not an esoteric term of art. It is not *sui generis* to the TCPA. It was commonly understood in 1991 when the TCPA was passed, and remains so today. It thus comes as no surprise a text message was not a telephone call then or now. As one court recently remarked, "[c]ertainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis v. CVS Pharmacy, Inc*., -- F. Supp. 3d --, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) (emphasis in original). Plaintiff seeks to contort "telephone call" to embrace all forms of modern communication received on a phone, including text messages. Plaintiff's view is misguided for myriad reasons. It is up to Congress, not Plaintiff, to amend the TCPA.

First, Plaintiff commits the threshold error of *ignoring* the sea-change the Supreme Court effectuated through its rulings in *Loper Bright* and in *McLaughlin Chiropractic*. These rulings reshaped the ability of this Court to independently interpret the TCPA to reach the **best** interpretation of the statute as it was written in 1991 irrespective of the modern shift in communications or policy goals. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). As a result, Plaintiff fundamentally misapprehends the recent wave of cases holding that a text message **is not** a telephone call. *See Davis*, 2025 WL 2491195, at *1; *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. July 21, 2025); *El Sayed*, No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

Second, Plaintiff engages in tenuous statutory interpretation. At the outset, Plaintiff argues statutes must evolve with technology. While it is true that technologies evolve—for example, an iPhone is still a telephone, even if it did not exist in 1991—the meaning of telephone call has not. A text message was not a telephone call in 1991, and it is not a telephone call today.

Plaintiff next errs in contending that the term "telephone solicitation" encompasses "telephone call or message," and thus the TCPA's coverage of text messages has been hiding in plain sight since 1991, prior to their advent. This argument is meritless. "[M]essage" refers not to text messages, but to prerecorded voice messages. The term "message" appears throughout the TCPA, and this consistency evidences its meaning. *See* 47 U.S.C. § 227(b)(1)(B); *see also Jones*, 2025 WL 2042764, at *4 ("Section 227(a)(4) does not refer to 'text message'; 'telephone call or message' could not be interpreted in 1991 to telephone call or text message . . . ."). Even then, the fact that Congress used the distinct phrase "telephone call or message" only proves that "telephone call" by itself has a narrower meaning. This is confirmed by Congress's subsequent amendment in another part of the TCPA to specifically include text messages as separate from telephone calls.

Finally, Plaintiff errs in turning to broad policy rationales. The Supreme Court recently rejected another attempt to use policy rationales to expand the TCPA. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). Even where the TCPA may be outdated, it is up to Congress alone to update the TCPA for modern trends. *Id.* Plaintiff's arguments are also self-defeating. By Plaintiff's argument, a "call" is *any* attempt to communicate by phone, encompassing most modern cellular telephone communications, like app-to-app messages, push notifications, and even emails.

Third, Plaintiff insists this Court must defer to the FCC, arguing 47 U.S.C. § 227(c) acts as a broad delegation to the FCC. This is meritless. While Congress may "expressly delegates to an agency the authority to give meaning to a particular statutory term," *Loper Bright*, 603 U.S. at 394 (cleaned up), Congress did not give the FCC authority here redefine a "telephone call."

The simple fact of the matter is that it is for Congress, and not Plaintiff, to amend the TCPA if appropriate. *See Facebook*, 592 U.S. at 409. Plaintiff did not receive any telephone calls and thus has no claim. This case must be dismissed with prejudice.

2

# DISCUSSION

I.   **PLAINTIFF EFFECTIVELY IGNORES SUPREME COURT PRECEDENT.**

Plaintiff effectively treats the Supreme Court's opinions in *Loper Bright* and *McLaughlin Chiropractic* as though they never happened, effectively relegating these authorities to the final section of his opposition brief. (*See* Dkt. 31 at 22-25.) This is a fundamental mistake.

The Supreme Court recently effected a sea change in statutory interpretation generally, and of the TCPA specifically. First, by eliminating *Chevron* deference, the Supreme Court returned trial courts to their traditional function "to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392. Courts must utilize "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotations and citation omitted). Critically, "every statute's meaning is fixed at the time of enactment." *Id.* (internal quotations and citation omitted).

This past term, the Supreme Court issued its decision in *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025). This decision is critical because the Seventh Circuit previously viewed FCC Orders as binding at the district court level under the Hobbs Act. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017). The Supreme Court conclusively eliminated this line of authority, holding that district courts are not "bound by the FCC's interpretation of the TCPA." *See* 606 U.S. at 168. Rather, courts are to interpret the TCPA as courts traditionally do. *Id.*

These decisions result in the following: this Court must reach the "best" interpretation of the provision at hand, as written in 1991, based on traditional principles of statutory construction. The impact of these rulings are the foundation of the recent wave of cases holding that a text message *is not* a telephone call, and dismissing with prejudice the claim asserted here. *Jones*, 2025 WL 2042764 ("Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."); *Davis*, 2025 WL 2491195, at *4 (same); *El Sayed*, 2025 WL 2997759, at *2 (same). This Court should follow these analyses and similarly dismiss this case with prejudice.

3

## II.     PLAINTIFF'S EXERCISE IN STATUTORY INTERPRETATION IS MISGUIDED.

### A.     The Plain Language of the TCPA Ends This Inquiry.

Congress could not have meant for "telephone call" to include "text message," which "did not exist in 1991 when the TCPA was enacted." *Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023). Plaintiff concedes that Congress did not have text messages in mind. (*See* Dkt. 31 at 1.)

The meaning of a "telephone call" has not mysteriously changed in the last 30 years; "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. But whether in 1991, or 2025, a text message is not a "telephone call." As the Court in *Davis* put it:

> As CVS cogently explains,[] No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

2025 WL 2491195, at *1; *see Perrin v. United States*, 444 U.S. 37, 42 (1979) ("[U]nless otherwise defined words will be interpreted as taking their ordinary, contemporary, common meaning.").

It is thus unsurprising that courts engaged in a plain language analysis, post-*Loper* and *McLaughlin*, have held that "no ordinary person would think of a text message as a '*telephone call*.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis*, 2025 WL 2491195, at *1 (emphasis in original); *see also El Sayed*, 2025 WL 2997759, at *2 ("[A] 'telephone call' and a 'text message' are separate and distinct forms of communication . . . ."). Plain language ends the inquiry. *See Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023) ("We start and end with the plain language of the statute."); *Jones*, 2025 WL 2042764, at *5 (same).

Congress did not intend in 1991 the term "telephone call" to encompass form of *written* communication yet to exist. Plaintiff cannot overcome the statute's plain language.

4

### i. *Plaintiff's wholesale reliance on the dictionary is misguided and would lead to absurd results.*

Notwithstanding the plain and well-understood meaning of the term "telephone call," Plaintiff insists "the word 'call' in the TCPA refers to any attempt to communicate by telephone, including text messages." (Dkt. 31 at 6.) Plaintiff turns exclusively to the dictionary definition of "call" in hopes to persuade this Court. (*Id.*) Plaintiff's view suffers from multiple problems.

First, the Seventh Circuit has repeatedly warned that because "[d]ictionary definitions are acontextual," they "must be used as sources of statutory meaning only with great caution." *CFTC v. Worth Bullion Group*, 717 F.3d 545, 550 (7th Cir. 2013) (internal quotations and citation omitted); *see also United States v. Johnson*, 875 F.3d 360 (7th Cir. 2017) (same). Dictionary definitions are not dispositive and instead only serve as a "helpful resource in ascertaining the *common meaning* of terms that a statute leaves undefined." *CFTC*, 717 F.3d at 550 (emphasis added). Common meaning controls; Plaintiff's reliance on a dictionary definition out of context does not. It is further unclear why Plaintiff focuses on the word "call" in a vacuum rather than the pertinent and commonly understood statutory term "telephone call." 47 U.S.C. § 227(c)(5). An acontextual dictionary definition does not change the fact that no user of the English language refers to a text message, or thinks of a text message, as a "telephone call."

Plaintiff implores this Court to find that the TCPA employs a *sui generis* lexicon, using the term "call" to broadly embrace even communication mediums yet to exist. (*See, e.g.*, Dkt. 31 at 7-8, 18.) This defies common sense, and explains why Plaintiff provides not even legislative history suggesting "telephone call" carried an esoteric meaning encompassing all outreach received on a phone. *See El Sayed*, 2025 WL 2997759, at *2 (turning to "common American English"). Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001). Congress remains free to speak clearly and amend the TCPA to include text messages.

5

Second, as Plaintiff's cited authorities make clear, courts have generally looked to dictionary definitions only to assess whether the FCC's interpretation was reasonable—and therefore entitled to *Chevron* deference. (*See* Dkt. 31 at 6-7); *see, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (concluding "we must defer to the agency"). But *Loper Bright* makes clear that this Court's task is not to assess the reasonableness of the FCC's view; it is to identify the *best* interpretation of the statute. *See Loper Bright*, 603 U.S. at 400 ("In the business of statutory interpretation, if it is not the best, it is not permissible."); *see also Jones*, 792 F. Supp. 3d at 901 (rejecting a "reasonable" interpretation in favor of the best interpretation).

Third, and perhaps most problematically, Plaintiff's view would subject virtually all modern communications to the TCPA, like app-to-app messages, push notifications and even emails received on cell phones. Under Plaintiff's tortured reasoning, these too would be "telephone calls" since each is literally a "communication with a person by telephone." Plaintiff's goal in this respect is further evidenced by his unduly expansive views of terms like "transmit" and "message,"[1] openly seeking to encompass any possible outreach received on a telephone. The impact of Plaintiff's argument would be to bring within the ambit of the TCPA virtually all modern communication. This is not what Congress meant in 1991 and would be an absurd result. The TCPA is not a free-wheeling statute regulating *all* communications received on a handheld device.

Plaintiff ignores the principle that "[o]ne can properly attribute to legislators the reasonable minimum intention to say what one would ordinarily be understood as saying, given the circumstances in which it is said." *Costello*, 666 F.3d at 1044 (cleaned up). It defies reason that Congress would have attributed anything other than the *common meaning* of a "telephone call" in 1991 (or, indeed, now). *See, e.g.*, *Davis*, 2025 WL 2491195, at *1.

---

[1] As detailed below at Section II.C, Plaintiff misapprehends the TCPA's use of the term "message."

6

### ii. *Subsection 227(b) does not impact the analysis.*

Plaintiff next contends that his expansive reading of "telephone call" is supported by the use of the term "call" in 47 U.S.C. § 227(b), the TCPA's provision regulating autodialed and prerecorded calls. Specifically, Plaintiff contends the term "call" must encompass text messages because 47 U.S.C. § 227(b) prohibits making certain calls to, *inter alia*, a "any telephone number assigned to a paging service . . ." (Dkt. 31 at 8.) There are two key errors with Plaintiff's analysis.

<u>First</u>, Plaintiff starts from the premise that 47 U.S.C. § 227(b) demonstrates that the term "call" covers more than just voice calls. The issue is not whether a telephone call must include spoken words, but whether a text message is a telephone call. It is not; these are two different forms of communication. *See Davis*, 2025 WL 2491195 at *1; *El Sayed*, 2025 WL 2997759, at *2.

<u>Second</u>, and similarly, that a separate subsection of the TCPA covers specifically autodialed and prerecorded calls to a paging service is simply not germane as to whether the term "telephone call" encompasses text messages. At the outset, Plaintiff improperly conflates how a paging device would *display* outreach with how that outreach is made in the first instance—namely, by an *actual telephone call*. (*See* Dkt. 31 at 8 [referring to how a paging device displays messages].) The purpose of Section 227(b) was to prohibit automatic telephone dialing systems from being used to make calls *en masse* to large blocks of telephone numbers which could "simultaneously tie up all the lines" for hospitals, businesses, pagers, and cell phones. *Facebook*, 592 U.S. at 399-400, 405-06. This subsection has absolutely nothing to do with transmitting text messages to pagers. *See id.*

Also, Subsection 227(c)(5) speaks to "telephone calls" as opposed to merely the term "call" used in Subsection 227(b). *See, e.g.*, *Davis*, 2025 WL 2491195, at *2 (noting the distinction in statutory subsections 227(b) and 227(c)(5)). Indeed, Subsection 227(b)'s application to pagers highlights that the TCPA was not drafted to encompass future modes of communication. *See, e.g.*, *Facebook*, 592 U.S. at 409 (rejecting broad interpretation of a "senescent" TCPA statutory term).

7

Plaintiff takes as a given throughout that Subsection 227(b) applies to text messages, and then uses this assumption to bootstrap his argument as to Subsection 227(c)(5). (*See* Dkt. 31 at 8, 16-17, 21.) This premise fails. Plaintiff does not establish the term "call" in Subsection 227(b) encompasses text messages, or that it controls the interpretation of Subsection 227(c)(5).

   *iii.* ***Plaintiff's reliance on pre-Loper and McLaughlin cases is meritless.***

As a final matter, Plaintiff takes the misleading position that "courts and the FCC have long and recently recognized" the term "telephone call" encompasses text messages. (Dkt. 31 at 6, 9-10.) The fact is that until recently, courts in this Circuit found they were bound by the FCC's views. *See Hudson v. Ralph Lauren Corp.*, 385 F. Supp. 3d 639, 642 n.3 (N.D. Ill. 2019) ("[A]t this time, the FCC's final orders bind the Court under the Hobbs Act."). This view is now foreclosed.

Plaintiff's reliance on cases like *Campbell-Ewald* and *Hulce v. Zipongo* is similarly misleading. (Dkt. 31 at 9-10.) In both cases the issue of whether text messages were covered as "calls" was either not challenged or not before the court. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (noting the issue was "undisputed"); *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 (7th Cir. 2025) (evaluating a plaintiff's appeal from summary judgment and never once evaluating this issue). These cases do not move the needle. *See, e.g.*, *Davis*, 2025 WL 2491195, at *2 (rejecting reliance on cases like *Campbell-Ewald* where the issue was never analyzed).[2]

  **B.** **Congress Similarly Understands a Text Message Is Not a Telephone Call.**

Congress also agrees that a text message is not a telephone call. As Fashion Nova noted in its Motion, Congress amended the TCPA in 2018 to bring text messages within its scope under a different provision regarding Caller ID requirements, 47 U.S.C. § 227(e). Congress distinguished

---

[2] It again bears noting that both cases in pertinent part pre-dated *Loper Bright* and *McLaughlin Chiropractic*, and thus defendants could not have raised the challenge that is before the Court now. *Campbell-Ewald* was issued a decade ago and *Hulce* evaluated a summary judgment decision issued by the trial court in March of 2024 (roughly three months before *Loper Bright*).

between telephone calls and text messages. 47 U.S.C. § 227(e)(8)(A), (B). Congress did not amend Section 227(c) to include text messages, though it understood the difference between calls and text messages. *See also El Sayed*, 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction.") (citing 47 U.S.C. § 227(e)).

Plaintiff asserts that Section 227(e) portrays a "'text message' as something that is done by a 'caller,' just like a traditional voice call is." (Dkt. 31 at 18-19.) This is completely invented. Section 227(e) does not use "caller" in this manner. It speaks to "caller identification services," which in turn is defined referring to "<u>a call made using a voice service</u> or <u>a text message sent using a text messaging service</u>." 47 U.S.C. § 227(e)(8)(A) (emphasis added). This proves that Congress, like everyone else, views a call and a text message as entirely separate forms of communication.

Were Plaintiff's boundless view of a "call" correct—that is, that a call encompasses any communication received on a telephone—there would have been no reason for Congress to separately speak to text messages at all. Again, "no ordinary person would think of a text message as a '*telephone* call.'" *Davis*, 2025 WL 2491195, at *1 (emphasis in original). Furthermore, "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). It would make no sense to read the term "telephone call" to swallow "text message" in Subsection 227(c), but then treat text messages as separate in Subsection 227(e).[3] *See Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1162 (9th Cir. 2023) ("If voice calls encompassed text messages, the inclusion of the term text message would be surplusage, and Congress would

---

[3] Plaintiff cites a line from the Consolidated Appropriations Act that does not appear in the TCPA, indicating the caller identification rules should not be construed to affect the FCC's TCPA orders. (Dkt. 31 at 18, 19.) Even if this line applied generally, it would not apply here. The Act was passed in 2018. The FCC did not construe Subsection 227(c) to include text messages until *2023*. *In the Matter of Targeting & Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256 (2023).

9

have written the statute in a manner contrary to a basic canon of statutory construction, that a statute should be interpreted 'so as not to render one part inoperative.'"). Congress clearly understands the distinction between calls and texts and remains free to further amend the statute.

    **C.**    **Plaintiff Plainly Misinterprets the Term "Telephone Solicitation."**

Plaintiff's opposition engages in a critical interpretive error in hoping to construe the term "telephone call" to encompass text messages. Plaintiff contends that the definition of "telephone solicitation," which refers to "telephone call or message" has been hiding text messages in plain sight for more than thirty years. (*See* Dkt. 31 at 11.) This argument is meritless.

It is true that the key regulation, 47 C.F.R. § 64.1200(c)(2), covers "telephone solicitations," and that this term is defined to include "telephone call or message." 47 U.S.C. § 227(a)(4). Where Plaintiff errs is that "message"—again, this definition was adopted in 1991, prior to the advent of text messages—refers not to text messages, but *prerecorded voice messages*. *See Jones*, 2025 WL 2042764, at *4 ("Section 227(a)(4) does not refer to 'text message'; 'telephone call or message' could not be interpreted in 1991 to telephone call or text message . . . .").

The term "message" appears throughout the TCPA, elucidating its meaning. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain calls "using an artificial or prerecorded voice to deliver a message . . . ."); 47 U.S.C. § 227(d) (referring to fax messages and "artificial or prerecorded voice messages"); *Azar v. Allina Health Servs*, 587 U.S. 566, 576 (2019) ("[W]hen Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout."). Plaintiff's reliance on one word, out of context, is self-defeating.[4] Indeed, as the court in *Davis* noted, "Congress's use of the phrase 'telephone call or message' . . . shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 2025 WL 2491195, at *2.

---

[4] Plaintiff's authority *Pepper v. GVG Capital* commits this same error. (*See* Dkt. 31 at 12.)

### D. Plaintiff Seeks to Craft a New Private Right of Action for Text Messages.

Plaintiff next analogizes to older statutes applying to new technologies, arguing statutes can apply beyond the specific application envisioned at the time of enactment, and for that reason the TCPA should encompass text messages. (Dkt. 31 at 13, 20-21.) While it is certainly true that older statutes may encompass technologies not yet envisioned, that is not what Plaintiff seeks here.

Plaintiff is not merely asking to apply the TCPA to evolving technology; he is asking for a new private right of action. The apt analogy here would be applying the TCPA to calls received on an iPhone. The means by which we place and receive telephone calls have evolved since 1991. But while telephones have evolved, *the meaning of a telephone call has not*. A text message was not a telephone call in 1991, and it is certainly not considered a telephone call now. *See Davis*, 2025 WL 2491195, at *1. Plaintiff is not asking, to use his own example, to apply an old vehicle statute to a modern car; he is asking to apply an old vehicle statute to an airplane.

The Supreme Court provided a roadmap here in *Facebook*, which rejected a substantively identical effort by a plaintiff to expand a key statutory term in the TCPA to mold the TCPA to modern times. There, the Court rejected the plaintiff's reading, holding "Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked. 'Senescent' as a number generator (and perhaps the TCPA itself) may be, but that is no justification for eschewing the best reading of § 227(a)(1)(A). This Court must interpret what Congress wrote . . . ." *Facebook*, 592 U.S. at 409. The same is true here; it is Congress's purview to amend the TCPA, not Plaintiff's.

Plaintiff's analysis consists of little more than smoke and mirrors. Plaintiff simultaneously argues that (i) the TCPA cannot be confined in application to what existed in 1991, but also that (ii) modern and common usage of the term "telephone call" must be rejected. (Dkt. 31 at 13-15.) Plaintiff cannot have it both ways. It inevitably matters not. The term "telephone call" did not encompass text messages in 1991 or today. *See Davis*, 2025 WL 2491195, at *1.

### E. Plaintiff's Policy Arguments Cannot Overcome Plain Language.

Plaintiff focuses throughout his brief on policy arguments. Namely, that covering text messages fits the overall policy goals of the TCPA and the do-not-call regulations. (*See* Dkt. 31 at 1, 3, 10, 12.) Policy prerogatives, however, cannot supplant or alter the plain language of the TCPA.

The Supreme Court made clear that policy arguments and "gestures at Congress' broad privacy-protection goals" are no basis to "eschew[] the best reading" of the TCPA. *Facebook*, 592 U.S. at 408-09 (cleaned up). The TCPA was not intended as free-wheeling statute to address all telephonic outreach. *See Loper*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."); *Ins. Mktg. Coal.*, 127 F.4th at 315 ("Atextual good policy cannot overcome clear text.").

The simple fact of the matter is that the private right of action at issue here is limited to recipients of "telephone calls." 47 U.S.C. § 227(c)(5). Plaintiff cannot overcome this language by turning to his perceived purpose of the do-not-call registry regulations or by focusing on the content of the communication rather than the medium of the communication. (*See* Dkt. 31 at 12); *see also Hulce*, 132 F.4th at 500 ("Hulce's appeals to the remedial nature of the TCPA or selective quoting of the legislative history do not carry the day.").[5] And even if the TCPA more broadly regulates telephonic outreach, the private right of action remains intentionally limited. *See Davis*, 2025 WL 2491195, at *3 ("I reject Davis's suggestion that it would make no sense for Congress to limit the private right to telephone calls while regulating more broadly. Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter.")

---

[5] Plaintiff makes the curious argument that argues Subsection 227(c)(5) cannot have a narrower interpretation than the "regulations it exists to enforce . . . ." (Dkt. 31 at 16.) This is backwards. Subsection 227(c)(5) preceded the regulations at issue by more than a decade

A text message is not a telephone call and is not actionable under Section 227(c)(5), unless and until Congress, in its sole province, amends the TCPA. *See Facebook*, 592 U.S. at 409 ("This Court must interpret what Congress wrote . . . ."); *Jones*, 2025 WL 2042764, at *5 ("It is for Congress to respond to the issues presented in this case and to address the realities of today's technology . . . . The Court confines itself to its assigned role which does not include legislating.").

### III. 47 U.S.C. § 227(c) DOES NOT ENABLE THE FCC TO ALTER THE DECISIONS CONGRESS MADE.

Finally, Plaintiff contends that this Court should defer to the FCC because he believes "Congress expressly delegated authority to the FCC to 'fill up the details'" of the do-not-call provision through 47 U.S.C.§ 227(c). (Dkt. 31 at 22-24, quoting *Loper Bright*, 603 U.S.at 395.) Plaintiff entirely misconstrues *Loper Bright* and the role of the FCC.

First, Plaintiff's insistence that deference still carries the day is wrong on its face. The Supreme Court stated as much twice that, at best, agency interpretations are afforded appropriate *respect*. *See McLaughlin Chiropractic*, 606 U.S. at 155 ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.") (citing *Loper Bright*, 603 U.S. at 402).

Second, the concept Plaintiff speaks to—where Congress engages in express delegation to an agency to define a term—arises where "statutes 'expressly delegate to an agency the authority to give meaning to a particular statutory term . . . .'" *Loper Bright*, 603 U.S. at 394–95 (cleaned up). To be sure, the TCPA does give the FCC, in relevant respect, authority to implement the do-not-call regulations. Nowhere, however, does the TCPA give the FCC the authority to alter the meaning of the term "telephone call." *See id.* at 395 n.5 (providing examples where agencies are expressly instructed to define certain terms).

13

The FCC was instructed to consider "initiat[ing] a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This does not authorize the FCC to alter or expand the private right of action found at 47 U.S.C. § 227(c)(5). *See, e.g.*, *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) ("After all, a generic grant of rulemaking authority to fill gaps . . . does not allow the FCC to alter the specific choices Congress made.") (cleaned up).

Third, the FCC's initial expansion of the term "call" to include "text message" did not occur under 47 U.S.C. § 227(c). *See, e.g.*, *Jones*, 2025 WL 2042764, at *4 ("[T]he 2003 Order explicitly references only Section 227(b)."). And when the FCC addressed 47 U.S.C. § 227(c) in 2023, it made no reference to the term "telephone call" as that term is used in 47 U.S.C. § 227(c)(5). The FCC addressed the do-not-call registry and engaged in no statutory analysis at all. *See In the Matter of Targeting & Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256-57 (2023) [hereinafter the "2023 Order"] (discussing policy prerogatives like the ease of enforcement and the desire to have uniformity with its interpretations under 227(b)).

Fourth, and contrary to Plaintiff's argument (Dkt. 31 at 25), the FCC's view has no persuasive value. As an initial matter, the Supreme Court holds that "interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning." *Loper Bright*, 603 U.S. at 394. The FCC did not determine a "call" could include a text message under 47 U.S.C. § 227(b) until 2003, and did not issue its view as to 47 U.S.C. § 227(c) until 2023, both long after the TCPA.[6] As a

---

[6] Plaintiff suggests that the FCC's 2003 interpretation was contemporaneous. (Dkt. 31 at 9.) A twelve year gap is no more contemporaneous than a twelve year old's birthday is contemporaneous with their birth. The relevant measure of contemporaneous is contemporaneous with the passage of the statute, not contemporaneous with the popularity of SMS, as Plaintiff suggests. (*See id.*)

14

more substantive matter, the FCC's analysis of the issue at hand has been bereft at best. In neither the 2003 nor 2023 Orders did the FCC engage in substantive statutory analysis. *See* 2003 Order, 18 F.C.C. Rcd. at 14115 (simply stating, without analysis, that the term "call" included text messages); 2023 Order, 38 F.C.C. Rcd. at 12257 (turning to policy rationales, like ease of enforcement).

Ultimately, the plain language controls. A text message is not a telephone call. As one court put it, "[o]ne can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Davis*, 2025 WL 2491195, at *4 (internal citation omitted). Whatever respect the FCC's view is entitled to (and it is not much), "the court's role is not to look beyond clear language to ascertain Congress's purpose." *Id.* at *3; *see also Jones*, 2025 WL 2042764, at *5 ("It is not for a court to legislate by reading into the TCPA something that is not there."). Plaintiff's "quarrel is with Congress," *Facebook*, 592 U.S. at 409; this case should be dismissed.

## IV.    PLAINTIFF'S SUPPLEMENTAL AUTHORITY IS UNPERSUASIVE.

On November 13, 2025, Plaintiff submitted the authority *Mujahid v. Newity, LLC*, No. 25-8012, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025). (Dkt. 36.) Putting aside Plaintiff's improper additional argument, *Mujahid* is unpersuasive for the reasons articulated *supra*: (i) the court relied heavily on the dictionary definition of "call;" (ii) the court turned to pre-*Loper* and *McLaughlin* decisions assuming (but not analyzing) a text message was covered under Subsection 227(b); (iii) the court improperly relied on policy; and (iv) the court was persuaded by FCC interpretations that involved no substantive analysis, much less statutory interpretation. Most notably, the court did not—and did not endeavor to—reach the *best* interpretation, which is now this Court's lodestar.

15

## **CONCLUSION**

For the foregoing reasons, Fashion Nova respectfully requests that this Court dismiss this case with prejudice.

Dated: November 17, 2025                    Respectfully submitted,

By: /s/ *David M. Krueger*
David M. Krueger (OH 0085072)
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Tel. 216-363-4500
dkrueger@beneschlaw.com

Mark S. Eisen (*pro hac vice forthcoming*)
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
Tel. 312-212-4956
meisen@beneschlaw.com

Counsel for Fashion Nova, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2025, I electronically filed a true and correct copy of the above and foregoing pleading with the Southern District of Indiana using the CM/ECF system.

                                                    By: */s/ David M. Krueger*
                                                         David M. Krueger